UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRUSTEES OF THE TEXAS IRON | § | |
| WORKERS' PENSION TRUST FUND, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-05-3051 |
| | § | |
| BARBARA LOU TAYLOR, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM

### I.

Before the Court are the interpleader complaint of the Trustees of The Texas Iron Workers' Pension Trust Fund (Trustees), the motion for temporary restraining order and request for injunction by the defendant, Barbara Lou Taylor, the answer and complaint of the defendant, Linda Taylor Start, and the various memoranda and arguments of counsel. The Court conducted a hearing in open Court and determines that the issues presented by the case are settled, as a matter of law. Therefore, the Court holds that the Trustees' interpleader is denied, the defendant Taylor's motion for injunction is granted and the opposition of the defendant Start is overruled and her complaint dismissed.

### II.

The background facts relevant to the issues raised reveal that Carl Anthony Taylor, Sr., deceased, was employed with the Texas Iron Workers for a number of years. As a result, he qualified for and received pension benefits through his union, Local Union No. 84. Upon

retirement, September 10, 2002, Taylor filed an application for pension benefits.  At that time, he represented to the Trustees that Barbara Lou Taylor was his wife.  One week later, Taylor died and Mrs. Taylor filed for the pension benefits on or about October 25, 2002.  After Mrs. Taylor produced a Marriage Certificate dated January 14, 1989, the Trustees approved her application.

By calculations, Taylor was to receive 60 monthly payments of $1,441.00 each.  These payments were made without question until July 2005.  On or about July 5, 2005, Linda Taylor Start forward a handwritten letter request for information to the Trustees concerning death and retirement benefits pertaining to Carl Anthony Taylor, Sr.  Ms. Start represented that she was, in fact, the wife of  Taylor and that they had never divorced.  Ms. Start produced an application for a marriage license and a Marriage Certificate that revealed a marriage between herself, Linda Ojeda, and Carl Anthony Taylor on June 24, 1964.  The application and Marriage Certificate show that Taylor was 17 years of age and Ms. Ojeda was 13 years of age at the time of the marriage.

Ms. Start claims that she is entitled to Taylor's pension funds because they were never divorced.  Moreover, she argues, Taylor could not have legally married Barbara Lou Berry in January 1989, because he was at all times married to her.

### III.

The facts of this case show that both Taylor and Ms. Start were minors in 1964 and unable to legally consummate a legal marriage.  Hence, in order to consummate a legal marriage, the consent of a parent or a county judge was necessary.  The record shows that Carl Anthony Taylor, Sr., in fact,  received the consent of his father, James Orlin Taylor.  However, the record fails to reflect that Linda Ojeda [Ms. Start] received the consent of a parent or a county judge.

The application for a marriage license simply reads "Article No. 4605" in the space where consent or authority was to be designated by Ms. Ojeda.

Nevertheless, Ms. Start argues that her father consented to the marriage. And, "[w]hile a county clerk may have been prohibited from granting consent under Article 4605, a judge wasn't; the judge waived any requirements or provisions of Article 4605 on June 19, 1964." Apparently, Ms. Start is referring to the fact that the Justice of the Peace performed the marriage and signed the Marriage Certificate. However, a Justice of the Peace is not a county judge.

The Court HOLDS that the Application for a Marriage License is no evidence of a judicial waiver. Moreover, it is no evidence that Ms. Ojeda's father consented to the marriage. The signatures on the documents are those of the deputy clerk who issued the license and the Justice of the Peace. There is no authority in the record that a county judge waived parental consent.

The purpose of the county judge is stand in the place of a parent in certain circumstances. Specifically, a county judge may give consent where the minor does not have a parent or guardian alive who can consent. The statute requires that the consent of the county judge be "in writing and signed and acknowledge." Without consent, females under the age of 14 years of age *shall* not marry. Tex. Rev. Civ. Statutes, Art. 4603 [Vernon ____]. Therefore, the Court concludes that Taylor and Ms. Start were not legally married on June 24, 1964.

In the alternative, Ms. Start argues that they consummated a common law marriage. She argues that even if the ceremonial marriage was illegal, they consummated a common law marriage because they lived together after she turned 14 years of age and held themselves out as married. Ms. Start relies on *Turpley v. Poage's Adm'r;* 2 Tex. 139, 149 (1847) and *Humphreys v. Humphreys,* 364 S.W.2d 177, 178 (Tex. 1963), as case law authority for her argument. She also points the Court to a Texas Attorney General's opinion [AG], dated October 27, 1969, that

opines on Sections 1.91 and 1.92 of the Texas Family Code.  Taken together, Ms. Start asserts that she established and maintained a common law marriage with Carl Anthony Taylor, Sr., after she turned 14 years of age and has never divorced him.

Neither *Turpley* nor *Humphreys* aids Ms. Start's cause.  These cases merely state the essential elements of a common law marriage.  A common law marriage requires that there exist a present agreement to be husband and wife, living together as husband and wife, and holding each other out to the public as such.  364 S.W.2d at 178.  However, Ms. Start must first overcome the assumption that she and Taylor never fulfilled the requirements of the law for such a marriage to exist.  This requires a showing that there was no legal impediment that prevented the marriage effort to be consummate into a legal marriage.  For this argument, Ms. Start relies upon an the AG's opinion for support.  However, that the AG's opinion does not support or satisfy Ms. Start's burden.

Relying on  the AG's opinion, of which Ms. Start quotes, Ms. Start asserts that "males under 19 years of age but over 16 years of age, and females under 18 years of age, but over 14 years of age, whether or not they have parental consent, may execute a declaration of informal marriage." From this quote, Ms. Start concludes that she was able to consummate a common law marriage after she turned 14 years of age.  This is a flawed conclusion because the AG's opinion  refers to newly enacted, Section 1.91 and 1.92 of the Family Code.

Section 1.91 and 1.92 of the Family Code did not become effective until January 1, 1970, some six years after Taylor and Ms. Start [Ojeda] attempted to ceremonially consummate a marriage.  Hence, that statute is inapplicable here because it was not the law until January 1970. The Trustee's documentation shows [Ex. #7, Complaint to Interpleader] that on July 11, 1971, eighteen months later, Carl Anthony Taylor, Sr., was holding himself out as married to Qualin

Sue Taylor and that together had two sons, Ray Anthony Taylor, born December 7, 1965, and Carl Anthony Taylor, Jr., born April 13, 1967.  Both of these children, between Taylor and Qualin Sue Taylor, were born prior to 1970.  The evidence shows that later Taylor professed being married to Patricia Ann (Skeleton) Taylor and finally to Barbara Lou Taylor.  The evidence of cohabitation with Qualin Sue Taylor and two sons to that union, starting in 1965 means that, in the mind of Taylor and in the eyes of the law, he was not in a common law marriage with Ms. Start.

It is equally important to note that before 1970 the state law did not permit a common law marriage except between a *man* and *woman* [emphasis added].  Article 4603 of the Revised Civil Statutes specifically stated:  *[W]ho shall not marry  -- Males under sixteen and females under fourteen years of age shall not marry*  .  Hence, Ms. Start did not have the legal capacity to marry until she turned 14 years of age.  At 14 years of age, she could marry only if she had the consent of a parent, guardian or county judge.  The consent of either would remove the legal impediment.  While a common law marriage does not indicate a particular age, *parties to common law marriage must possess the same criteria of competency to contract marriage that their ceremonial marriage counterparts are required to meet if their common law marriage is to be held valid* . *See* 38 Tex. Jus. 2d 51; *Hinojos v. Railroad Retirement Board* , 323 F.2d 227 (5th Cir. 1963).

In conclusion, Ms. Start was incompetent to enter into a ceremonial or common law marriage with Carl Anthony Taylor, Sr., until July 7, 1968, after he had co-habitated with and had children with Qualin Sue Taylor.  And, there is no evidence before the Court that supports the conclusion that he ever held himself out as married by common law to Ms. Start after July 7, 1968.  In fact, the evidence contradicts that conclusion.

Therefore, the Court HOLDS that Linda Taylor Start was never ceremonially or common law married to Carl Anthony Taylor, Sr.  The application of Barbara Lou Taylor for injunctive relief against the Trustee of the Texas Iron Workers' Pension Trust Fund and its application for interpleader are rendered Moot by the Court's conclusions.

It is so Ordered..

SIGNED and ENTERED this 19th day of December, 2005.

Kenneth M. Hoyt
United States District Judge